Bullard, J.
This is an action to recover of the defendant *324 three slaves, to which the plaintiffs assert title under a trust sale in the State of Mississippi. The slaves, together with other property, had been mortgaged in the form of a deed of trust, by one Saunders, to secure the payment of a note due by him to Folkes, Walker & Co., for $4500 ; and the trustees proceeded to sell the slaves, and the plaintiffs became the purchasers of those sued for in this action. The deed gave to the .trustees the power to sell the property at auction to the highest bidder, at the request of the holder of the note, by giving twenty days’ notice, in any newspaper published in Hinds or Madison county, of the time and place of sale.
The defendant answers, after a general denial of all the facts and allegations not admitted, that the plaintiff, Tupper, who is an attorney at law, was employed by him in 1837 or 1838, and that he thus learned from the defendant the fact that some of his slaves had been mortgaged by Saunders without any authority; that, taking advantage of this information, he had, by various contrivances, managed to get possession of the note and deed of trust, and to use the-same in order to extort money from the defendant; that the slaves have been since 1836, to the knowledge of the plaintiff, Tupper, the defendant’s property; and that he Tupper, the plaintiff has become the purchaser of all the other property included in the deed of trust, without giving credit for any part. He further alleges, that all right and title to and in the trust deed is vested in him by arrangement with the plaintiffs ; and finally, that all the plaintiffs’ proceedings are irregular, null and void, and convey no title.
The view we have taken of this case makes it unnecessary to go into a detail of all the facts which led to the controversy. We will confine ourselves to an inquiry into the circumstances under which the plaintiffs became possessed of the note and deed of trust, and whether it was not upon conditions inconsistent with their proceedings under it, and their attempt to recover the slaves in this suit; and secondly, whether, even supposing they had a right to sell, they, the trustees, complied with the formalities required by the deed of trust.
The record shows, that the plaintiffs are the assignees of one Puckett, and were so at the time of the trustees’ sale, at which *325 they purchased the slaves. He had become the assignee of the deed of trust by assignment from Tupper and Walker: Puckett was examined as a witness, and testified that most of the property embraced in the deed of trust, had been sold by the Sheriff of Madison county, subject to the deed of trust, and for much less than it would otherwise have brought; that Saunders had already paid about $2000, and that the deed was assigned on the day of sale ; that Walker and Tupper purchased the greater part of the property; that he, Puckett, gave Tupper $1000 on his half of the purchase ; that the execution under which the property was sold, belonged to Puckett, and that the land was bought for him ; that the property was delivered to him with the deed of trust; that all parties then considered the debt liquidated ; that when he re-assigned the deed of trust to Tupper, it- was agreed that it was to be used solely to procure good titles to the land; that the assignee was to consider the laud alone liable under the deed, and that he, Puckett, while he held the "deed, had often assured Scott that his negroes should not be taken, as he considered it settled. The witness says: “ I told him (Tupper) that I considered the deed of trust void ; he replied, that he also doubted it, and that Rollins thought as he did. I, however, agreed to transfer the deed to him, if he would consider the land alone liable under it.”
Thus it appears, that the plaintiffs procured a re-assignment of of the deed of trust and note, merely for the purpose of extinguishing the encumbrance which they created on the land purchased at the Sheriff’s sale, which had been sold subject to that encumbrance.
Another witness, (Wyley,) annexes to his deposition a copy of the acknowledgment in writing of Tupper, in the nature of a counter letter, showing the conditions upon which the trust deed had been re-assigned by Puckett to him. It is not signed by the assignor, but appears to have been deposited by him subject to his order in the hands of the witness. It shows the conditions of the assignment to have been somewhat different from what Puckett understood them. Tupper states the purpose for which the assignment was made, to have been to secure him against liability on a bill of exchauge drawn by himself and Walker on Hobson & Gooch, which was given to Folkes, Walker & Co., as *326 a part of the consideration for the transfer to him and Walker of the note and deed of trust, which bill Puckett had agreed to take up when he acquired the deed and note from Tupper and Walker, and he agrees to hold the property embraced in the deed of trust liable alone for the amount of said draft, $1600 or $1700, and for a note of Puckett’s for $1000. He further agrees, that if he purchases and gets possession of the land, and his title is not defeated by Puckett or his creditors, he will release him from all liability on the bill of exchange, and agrees to give up his note for $1000. Puckett has also a right to redeem his property in the deed of trust, at any time before Tupper and Walker are compelled to pay the bill of exchange.
Whichever be the true version of this agreement, or the understanding between these parties, it appears to us clear, that Tupper had no right to proceed under the deed of trust, without showing at least that the conditions had failed. So far as it concerned Saunders, the debt was extinct as soon as his property had been sold subject to it, and the purchaser had become the assignee of the debt; at least until it was shown that the property thus sold was not enough to pay it. Puckett and the plaintiffs seem to us, to have taken up a correct impression at first as'to the value of the note and deed of trust after the sale of Saunders’ land, especially after Puckett had promised Scott that the other slaves should not be seized and sold under it.
Even if this were doubted, there is another ground fatal to the pretensions of the plaintiffs. The sale was not made after twenty days’ public notice, as required by the deed of trusL The sale was on the 12th of January. The advertisement which was * published first on the 5th of December, announced the sale for the 25th of the same month. On that day it was postponed until the 12th of January, when the sale took place. But there was no public notice for twenty days, that the sale would take place on that day. The postponement of the sale to a particular day, ought to have been notified for twenty days. The time at which the sale took place, was not made known to the public twenty days before the sale. From the 5th of December until the 25th, the public was informed that the sale would take place on that day,' and not seventeen or eighteen days afterwards.
*327 It is not necessary to examine the questions of practice, which arose in the progress of the trial, being of opinion that the plaintiffs cannot recover in any aspect of the case.
It is, therefore, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and ours is for the defendant, with costs in both courts.